## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**TIFFANY CUNDIFF,**

      **Plaintiff,**

          **Case No. 2:24-cv-289**

      **v.**          **Judge Edmund A. Sargus, Jr.**

          **Magistrate Judge Elizabeth P. Deavers**

**FRANKLIN COUNTY BOARD**
**OF COMMISSIONERS,** *et al.*,

      **Defendants.**

## <u>OPINION AND ORDER</u>

This matter is before the Court on three Motions for Judgment on the Pleadings filed by Defendants. The first was filed by Defendant Armor Health of Ohio, LLC ("Armor Health") and Defendants Asha Kosgey, Kahlin Kelly, Benjamin Latelle, Amy Garbrecht, Wendy Shackleford, MiKael White-Davis, Gabrielle Poliseno, and Deanna Littick (collectively, "Armor Health Employees") (together with Armor Health, "Armor Health Defendants"). (Armor Health Mot., ECF No. 13.) The second was filed by Defendant NaphCare, Inc. ("NaphCare") and Defendants Asha Kosgey, Wendy Shackleford, Susan O'Brien, Kahlin Kelly, Ujwala Pagedar (collectively, "NaphCare Employees") (together with NaphCare, "NaphCare Defendants"). (NaphCare Mot., ECF No. 15.) The third was filed by Defendant Franklin County Board of Commissioners ("Board"). (Board Mot., ECF No. 23.)

One additional Defendant, Armor Correctional Health Services, Inc. ("Armor Correctional"), is in default and did not move for judgment on the pleadings. (*See* ECF Nos. 39, 40.) This matter is also before the Court Defendants' Joint Motion to Stay Discovery Pending the Court's Ruling on Defendants' Motions for Judgment on the Pleadings (ECF No. 26).

For the reasons stated in this Opinion and Order, the Court **GRANTS IN PART and DENIES IN PART** Armor Health Defendants' Motion for Judgment on the Pleadings (ECF No. 13), **GRANTS IN PART AND DENIES IN PART** NaphCare Defendants' Motion for Judgment on the Pleadings (ECF No. 15), and **GRANTS IN PART and DENIES IN PART** the Board's Motion for Judgment on the Pleadings (ECF No. 23). Defendants' Joint Motion to Stay Discovery Pending the Court's Ruling on Defendants' Motions for Judgment on the Pleadings is **DENIED AS MOOT**. (ECF No. 26.)

## BACKGROUND

### I. Factual Allegations

Plaintiff Tiffany Cundiff is the Administrator of the Estate of Talent A. Bradley, who died by suicide in December 2021 while he was incarcerated as a pretrial detainee at the Franklin County Correctional Center ("FCCC"). Plaintiff originally filed this action in the Franklin County Court of Common Pleas in December 2023, alleging violations of Mr. Bradley's constitutional rights under 42 U.S.C. § 1983 and bringing a claim for wrongful death under state law. (ECF No. 1, PageID 1–2.) Defendant NaphCare removed this action to this Court pursuant to its jurisdiction over federal questions under 28 U.S.C. § 1331. (Id.) Plaintiff filed an Amended Complaint. (Am. Compl., ECF No. 6.)

Plaintiff's allegations involve the following named Individual Defendants: Amy Garbrecht, Psy.D., a psychologist; Kahlin Kelly, LPCC, a professional clinical counselor; Asha Kosgey, R.N., a nurse practitioner; Benjamin Latelle, LISW, an independent social worker; Deanna Littick, a professional clinical counselor; Susan O'Brien, LPCC, a professional clinical counselor; Ujwala Pagedar, M.D., a medical doctor; Gabrielle Poliseno, a professional clinical counselor; Wendy Shackleford, Ed.D., a professional clinical counselor; and MiKael White-Davis, LPC, a

professional counselor (collectively, "Individual Defendants"). (Am. Compl., PageID 127–132.)

According to Plaintiff, Mr. Bradley was booked into FCCC as a pretrial detainee on August 15, 2021. (*Id.* ¶ 31; *see* ECF No. 16, PageID 260.) Under a contract with the Board, NaphCare provided medical and psychiatric services at FCCC starting prior to Mr. Bradley's booking and continuing through October 17, 2021. (*Id.* ¶ 32; NaphCare Mot., PageID 227–28.) Armor Correctional and Armor Health took over medical and psychiatric services at FCCC starting on October 18, 2021, pursuant to a new contract with the Board, while Mr. Bradley was still incarcerated there. (Am. Compl. ¶ 34; *see* ECF Nos. 15-1, 15-2.) Plaintiff makes all her allegations against Armor Correctional and Armor Health collectively. (*See* Am. Compl. ¶¶ 6–7 (treating both Defendants as "Armor Health").) The relationship between the two entities is not explained in the pleadings. Because Armor Correctional is in default and did not move for judgment on the pleadings, the Court treats it and Armor Health separately in this Opinion and Order.

On August 17, 2021, shortly after he was booked, Mr. Bradley attempted suicide by hanging and was transported to the hospital for treatment. (Am. Compl. ¶ 31.) Plaintiff avers that Mr. Bradley "had no known history of mental health diagnosis or treatment prior to his incarceration." (*Id.*) Plaintiff asserts that "[o]ver the next several weeks, Bradley made several other suicide attempts and complained of hallucinations, including that Lucifer was commanding him to harm himself and others." (*Id.* ¶ 32.)

Upon Mr. Bradley's return from the hospital, Defendant Shackleford, a counselor, placed Mr. Bradley on suicide watch. (*Id.*) Defendant Kosgey, a nurse practitioner, ordered psychiatric medication and saw him three times between August 15, 2021, and October 1, 2021. (*Id.* ¶ 33.) Defendant Latelle, a social worker, saw Mr. Bradley on October 27, 2021, and placed him on suicide watch. (*Id.* ¶ 34.) Defendant Poliseno, a counselor, then saw Mr. Bradley and took him off

suicide watch some time in the next few days. (*See id.*) Defendant Latelle then saw Mr. Bradley again on November 5, 2021, after Mr. Bradley complained of suicidal thoughts and hearing voices. (*Id.* ¶ 35.) Defendant Latelle placed Mr. Bradley on suicide watch again. (*Id.*) Plaintiff alleges that at this point, Mr. Bradley "was not seen by any provider that could address his medication needs for his continued thoughts of suicide and hallucinations." (*Id.*) "Shortly after," he was taken off suicide watch. (*Id.*)

Defendant Garbrecht, a psychologist, saw Mr. Bradley on November 30, 2021. (*Id.* ¶ 36.) Plaintiff alleges Garbrecht "failed to properly assess a patient she was unfamiliar with and just asked him a few questions about how he was feeling" and "did not address his history of suicide attempts." (*Id.*) On December 24, 2021, Defendant White-Davis, a counselor, saw Mr. Bradley "after he was found with a noose in his cell." (*Id.* ¶ 37.) She put him on suicide watch and removed him from suicide watch the next day, December 25, 2021, "after consulting with the Medical Director, Defendant Littick," who is also a counselor. (*Id.*) Mr. Bradley was found hanging in his cell, deceased, on December 27, 2021. (*Id.* ¶ 38.)

Regarding Defendants Kelly and O'Brien, both counselors, Plaintiff only generally alleges that Mr. Bradley "was put on suicide watch, and taken off suicide watch, by various providers, including Defendants Kelly and O'Brien, without complete evaluation." (*Id.* ¶ 32.) Regarding Defendant Pagedar, Plaintiff alleges she "rounded on one occasion, but she never completed a patient note." (*Id.* ¶ 33.)

## II. Plaintiff's Claims

Plaintiff brings two causes of action against NaphCare, Armor Health, Armor Correctional, Individual Defendants, the Board, John Doe Corporations #1–5, John Doe Physicians #1–5, John Doe Nurses #1–5, and John Doe Employees #1–5. She brings a third cause of action against the

Board only.

First, Plaintiff brings a claim against all Defendants for wrongful death under state common law, alleging Defendants "fell below the accepted standard of care, skill and diligence for health care providers, and medical provider employees in Ohio or other similar communities in their and treatment of [Mr. Bradley]." (*Id.* ¶¶ 40–41.) She asserts that "Defendants, individually and by and through their [employees] failed to meet the accepted standard of care . . . by:"

> (1) failing to properly evaluate and treat a new-onset psychotic break, which is a psychiatric emergency;
> (2) failing to have frequent appointments required for this psychiatric condition;
> (3) failing to have a psychiatrist participate in the care;
> (4) failing to use the psychiatric medications appropriately, based on the diagnosis and symptoms;
> (5) failing to develop a risk management plan; and
> (6) failing to properly evaluate when removing a patient from suicide watch.

(*Id.* ¶ 41.)

Plaintiff asserts Defendants NaphCare, Armor Health, Armor Correctional, the Board, and John Doe Corporations are liable under the doctrines of *respondeat superior* and agency by estoppel. (*Id.* ¶¶ 47–48.) She attached affidavits of merit from two medical doctors asserting that Defendants breached the applicable standard of care. (Am. Compl., PageID 151–52.)

Second, Plaintiff brings a claim against all Defendants under 42 U.S.C. § 1983, alleging that Defendants violated Mr. Bradley's rights under the Eighth Amendment to the United States Constitution by acting "deliberately and recklessly in the face of an unjustifiably high risk of harm that was either known or so obvious that it should have been known."[1] (*Id.* ¶¶ 52–53.) Under this

---

[1] Although a deliberate indifference claim relating to a convicted prisoner arises under the Eighth Amendment's Cruel and Unusual Punishment Clause, a deliberate indifference claim relating to a pretrial detainee, like Mr. Bradley, arises under the Fourteenth Amendment's Due Process Clause. Because the actions are similar, as explained below, the Court construes Plaintiff's claim as arising under the Fourteenth Amendment.

same cause of action, Plaintiff alleges that Defendants acted under color of state law and that the

Board "failed to properly train and supervise employees and or agents of Franklin County working

at FCCC." (*Id.* ¶¶ 58–60.) Specifically, she alleges Defendants exhibited deliberate indifference

by:

> (1) failing to train medical personnel at FCCC to identify medical emergencies . .
> .;
> (2) failing to determine Talent Bradley's immediate need for medical treatment and
> mental health care, and failing to obtain necessary [treatment] . . .;
> (3) knowingly and recklessly hiring and training medical personnel at FCCC who
> were not able to determine medical and mental health emergencies . . .; and
> (4) intentionally, willfully, wantonly, recklessly, and maliciously denying medical
> care to an inmate who they knew needed care and treatment for a serious medical
> and mental health condition.

(*Id.* ¶ 61.)

Third, Plaintiff asserts that the Board, through its employees, "violated Talent Bradley's

constitutional rights through enforcement of a county custom or policy that resulted in a failure to

train, supervise, or discipline employees and/or agents regarding the avoidance of constitutional

violations and the appropriate techniques for identifying and treating serious medical conditions

and mental health issues." (*Id.* ¶ 67.) She raises a municipal liability claim against the Board under

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) and does not raise a *Monell* claim against any

other Defendant. (*See* Am. Compl. ¶¶ 64–73; ECF No. 16, PageID 266; ECF No. 20, PageID 302.)

Armor Health Defendants (not including Armor Correctional) moved for judgment on the

pleadings, asking for the Court to dismiss all of Plaintiff's claims against them. (Armor Health

Mot., PageID 209.) Plaintiff responded (ECF No. 16), and Armor Health Defendants replied (ECF

No. 19). NaphCare Defendants separately moved for judgment on the pleadings, also asking the

Court to dismiss Plaintiff's claims. (NaphCare Mot., PageID 221.) Plaintiff responded (ECF No.

20), and NaphCare replied (ECF No. 21). Finally, the Board moved for judgment on the pleadings,

asking the Court to dismiss Plaintiff's claims against it with prejudice. (Board Mot.) Plaintiff responded. (ECF No. 28.) The Board replied. (ECF No. 33.)

Defendants filed a Joint Motion to Stay Discovery Pending the Court's Ruling on the Defendants' Motions for Judgment on the Pleadings. (ECF No. 26.) Plaintiff responded in opposition. (ECF No. 32.) Defendants replied. (ECF No. 35.)

## LEGAL STANDARD

The Federal Rules of Civil Procedure provide that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard of review for a Rule 12(c) motion for judgment on the pleadings is identical to the standard for a motion to dismiss under Rule 12(b)(6). *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295–96 (6th Cir. 2008).

To state a claim upon which relief may be granted, plaintiffs must satisfy the pleading requirements set forth in Rule 8(a). Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. (clarifying the plausibility standard articulated in *Twombly*). Furthermore, "[a]lthough for purposes of a motion to dismiss [a court] must take all the factual allegations in the complaint as true, '[the court is] not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 677–79 (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted).

"Under the Fourteenth Amendment, pretrial detainees have a 'right to adequate medical care.'" *Downard for Est. of Downard v. Martin*, 968 F.3d 594, 600 (6th Cir. 2020) (quoting *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005)). In 2015, the U.S. Supreme Court held that, for excessive force claims raised by pretrial detainees under the Fourteenth Amendment, a pretrial detainee must only show that the force purposely or knowingly used against him was objectively unreasonable. *Kingsley v. Hendrickson*, 576 U.S. 389, 397–98 (2015). More recently, the Sixth Circuit extended the holding in *Kinglsey* regarding excessive force claims to failure-to-protect claims, such as claims that prison officials acted with deliberate indifference to a pretrial detainee's serious medical needs. *Brawner v. Scott County*, 14 F.4th 585, 591–97 (6th Cir. 2021). Clarifying the holding in *Brawner*, the Sixth Circuit held that a pretrial detainee plaintiff claiming deliberate indifference must only show that jail and prison officials acted with recklessness regarding a pretrial detainee's serious medical needs, rather than with actual knowledge of those needs.[2] *See Helphenstine v. Lewis County*, 60 F.4th 305, 316–17 (6th Cir. 2023) (reaffirming and clarifying the holding in *Brawner*).

Thus, under *Brawner* and *Helphenstine*, for a deliberate indifference claim regarding a pretrial detainee to continue past a motion for judgment on the pleadings, a plaintiff must allege "(1) that [the detainee] had a sufficiently serious medical need and (2) that each defendant acted deliberately (not accidentally), and also recklessly in the face of an unjustifiably high risk of harm

---

[2] For deliberate indifference claims raised by prisoners under the Eighth Amendment, the plaintiff must show that "the alleged deprivation of medical care was serious enough to violate the Constitution" and that "a defendant knew of and disregarded an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Helphenstine v. Lewis County*, 60 F.4th 305, 315 (6th Cir. 2023) (citations omitted) (cleaned up). By contrast, in *Helphenstine*, the Sixth Circuit confirmed that the required mental state for deliberate indifference claims regarding pretrial detainees is recklessness. *Id.* at 316.

that is either known or so obvious that it should be known." *Helphenstine*, 60 F.4th at 317 (quotation and citation omitted) (cleaned up).

## ANALYSIS

Armor Health Defendants, NaphCare Defendants, and the Board argue that Plaintiff has not sufficiently pled an underlying constitutional violation to advance her 42 U.S.C. § 1983 deliberate indifference claim. Because Plaintiff's *Monell* claim is affected by the Court's decision on the deliberate indifference claims, the Court begins its analysis there.

### I.    Plaintiff's Deliberate Indifference Claims

Defendants concede that Mr. Bradley suffered an objectively serious medical need, (Armor Health Mot., PageID 215; NaphCare Mot., PageID 229), so the Court's analysis focuses exclusively on the subjective prong of the deliberate indifference test for pretrial detainees. To satisfy that prong, for each individual defendant, Plaintiff must allege that they acted deliberately and recklessly in the face of an unjustifiably high risk of harm to Mr. Bradley. *See Helphenstine*, 60 F.4th at 317.

#### a.    Armor Health Defendants

The Armor Health Defendants argue that the deliberate indifference claims against them should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because Plaintiff fails to allege sufficient facts showing that Armor Health or any of its employees acted with recklessness regarding Mr. Bradley's health and safety. (Armor Health Mot., PageID 215.) Further, Armor Health argues that it cannot be held vicariously liable for the actions of its employees under the doctrine of *respondeat superior*. (*Id.*) The Court first addresses the claims against the individual Armor Health Employees—Defendants White-Davis, Littick, Garbrecht, Kosgey, Latelle, Poliseno, and Kelly.

9

### i. Defendants White-Davis and Littick

Plaintiff alleges that Defendant White-Davis saw Mr. Bradley and placed him on suicide watch after Mr. Bradley was found with a noose in his cell on December 24, 2021. (Am. Compl. ¶ 37.) After consulting with Defendant Littick, Defendant White-Davis took Mr. Bradley off suicide watch one day later, on Christmas day. (*Id.* ¶ 37.) Mr. Bradley died by hanging himself in his cell two days later. (*Id.* ¶ 38.)

In a similar case involving a pretrial detainee who died by hanging himself in his cell, this Court granted the defendants' motions for judgment on the pleadings because "plaintiff offer[ed] no facts to support his conclusion that [the deceased] should not have been" taken off "safety watch" and "cleared to return to general population." *Est. of Bost v. Franklin County*, No. 2:22-cv-4476, 2023 WL 8018903 (S.D. Ohio Nov. 20, 2023) (Watson, J.). Here, Mr. Bradley exhibited suicidal tendencies, including his first of several suicide attempts, within just two days after he was booked into FCCC. Throughout his time at FCC, from August 2021 through his death in December 2021, Mr. Bradley repeatedly tried to kill himself and complained of hallucinations, including commands to harm himself and others. These behaviors continued past when Armor Health and Armor Correctional took over the medical and psychiatric care contract at FCCC on October 18 despite early attempts at treatment. As alleged, in the two months before his death, Mr. Bradley was put on suicide watch multiple times, he "was not seen by any provider that could address his medication needs for his continued thoughts of suicide and hallucinations," and his history of suicide attempts was not addressed. The Court accepts these facts as true, as it must, for the purposes of Defendants' Motions.

After all this, on Christmas Day 2021, Defendants White-Davis and Littick removed Mr. Bradley from suicide watch after just one day. Their decision to remove Mr. Bradley from suicide

watch came just one day after Mr. Bradley was found with a noose in his cell, demonstrating not only a suicidal ideation, but a potential plan to kill himself that aligned with previous attempts. The discovery of the noose, the one-day length of the subsequent suicide watch, and the allegations that Mr. Bradley's suicide attempts were not addressed in the past distinguish this case from *Estate of Bost*. It is reasonable to infer that the removal from suicide watch was reckless under these facts. *See Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843–44 (6th Cir. 2002) ("[W]hen the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." (quoting *Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir. 1989)).

Plaintiff ultimately pleads enough in the Amended Complaint, accepted as true, to raise a reasonable inference that Defendants White-Davis and Littick acted with conscious disregard of Mr. Bradley's serious risk of suicide by taking him off suicide watch just one day after he was discovered with a noose in his cell.

### ii. Defendant Garbrecht

Garbrecht, a psychologist, saw Mr. Bradley on November 30, 2021, a few weeks before his death. As alleged, she "failed to properly assess a patient she was unfamiliar with and just asked him a few questions about how he was feeling" and "did not address his history of suicide attempts." (Am. Compl. ¶ 36.) Given that Mr. Bradley had attempted to kill himself multiple times in the preceding months, Garbrecht's alleged failure to address his suicidal tendencies is enough to raise an inference that she acted with a conscious disregard for Mr. Bradley's serious psychological needs.

### iii. Defendant Kosgey

Both Armor Health and NaphCare filed a Motion for Judgment on the Pleadings on behalf

11

of Defendant Kosgey, a nurse practitioner. Plaintiff alleges that Kosgey saw Mr. Bradley three times during only his first two months at FCCC and "ordered psychiatric medication." (*Id.* ¶ 33.) But his hallucinations and suicide attempts continued. Plaintiff also alleges that after Armor Health took over services at FCCC, Mr. Bradley "was not seen by any provider that could address his medication needs for his continued thoughts of suicide and hallucinations." (*Id.* ¶ 35.) Given Kosgey's role as a nurse practitioner who prescribed medication for Mr. Bradley, the allegation that Kosgey was an employee of NaphCare and Armor Health, and Kosgey's status as an Armor Health Defendant, it is reasonable to infer that Plaintiff alleges Kosgey failed to address Mr. Bradley's medication needs in the weeks and months before his suicide. Considering the alleged lack of medical attention to Mr. Bradley's needs before his death in December 2021, the Court finds that the allegations are sufficient to raise a reasonable inference that, during her time as an Armor Health employee, Kosgey exhibited a conscious disregard for Mr. Bradley's serious medical needs.

### iv.  Other Armor Health Employees

Plaintiff alleges Mr. Bradley was seen by Defendants Latelle, a social worker, and Poliseno, a counselor, in late October. (*Id.* ¶ 34.) Latelle put him on suicide watch and Poliseno took him off "shortly after." (*Id.*) Latelle saw Mr. Bradley again in early November after he complained of suicidal thoughts and hearing voices and put him back on suicide watch another time. (*Id.* ¶ 35.) As alleged, Latelle removed Mr. Bradley from suicide watch even though "he was not seen by any provider that could address his medication needs for his continued thoughts of suicide and hallucinations." (*Id.*)

Additionally, Plaintiff alleges generally that, at some unspecified point, Kelly put Mr. Bradley on suicide watch and took him off "without complete evaluation." (*Id.* ¶ 32.) Last, Plaintiff

alleges Shackleford, a counselor, placed Mr. Bradley on suicide watch upon his return from a hospital stay following his first suicide attempt at FCCC. (*Id.* ¶ 31–32.)

The Court finds that the factual allegations against Kelly, Shackleford, and Poliseno are too generalized and lacking sufficient context to raise a reasonable inference that they acted with conscious disregard for Mr. Bradley's serious health needs. But Plaintiff's allegation that Latelle removed Mr. Bradley from suicide watch without Mr. Bradley being seen by any provider who could address his medical needs is sufficient to raise the reasonable inference of recklessness required at this stage.

### v.  Armor Health

Plaintiff alleges that Armor Health, a private corporation, violated Mr. Bradley's constitutional rights by acting with deliberate indifference to his serious medical needs. (*See* Am. Compl. ¶ 53 (alleging deliberate indifference against all "Defendants" generally).) Armor Health contracted with Franklin County to provide medical and mental health services at FCCC starting on October 18, 2021. "Private corporations that 'perform a traditional state function such as providing medical services to prison inmates may be sued under § 1983 as one acting under color of state law.'" *Rouster v. County of Saginaw*, 749 F.3d 437, 453 (6th Cir. 2014) (quoting *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)). Accordingly, courts treat private corporations fulfilling traditional state functions at prisons and jails as "municipalities" for the purposes of § 1983 claims made against them. *See id.*; *Est. of Bost*, 2023 WL 8018903, at *2 n.2 (treating Armor Health as a municipality for the purpose of the plaintiff's § 1983 claim).

Plaintiff asserts that Armor Health is liable under theories of *respondeat superior* and agency by estoppel. (Am. Compl. ¶¶ 47–49.) Plaintiff makes no argument to support an agency by estoppel theory of liability. And "[a] municipality cannot be liable for the constitutional torts of its

13

employees; that is, it cannot be liable on a *respondeat superior* theory." *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). "Rather, liability will attach only where the plaintiff establishes that the municipality engaged in a 'policy or custom' that was the 'moving force' behind the deprivation of the plaintiff's rights." *Id.* (quoting *Monell* at 694). Thus, "it can only be held liable for 'its own wrongdoing.'" *Helphenstine*, 60 F.4th at 323 (quoting *Morgan v. Fairfield Cnty.*, 903 F.3d 553, 565 (6th Cir. 2018)).

But in the Amended Complaint and in her brief in opposition to Armor Health Defendants' Motion for Judgment on the Pleadings, Plaintiff expressly states she is not bringing a *Monell* claim against Armor Health. (Am. Compl. ¶ 64–73; ECF No. 16, PageID 266.) Because Plaintiff's *respondeat superior* theory of liability against Armor Health is not actionable, Plaintiff's deliberate indifference claim against Armor Health fails as a matter of law.

In sum, for the reasons stated above, Plaintiff's deliberate indifference claim as to Defendants Garbrecht, Kosgey, Latelle, Littick, and White-Davis is sufficiently pled and can continue. The deliberate indifference claim as to Defendants Kelly, Shackleford, and Poliseno is not sufficiently pled, and the deliberate indifference claim against Armor Health fails as a matter of law. Plaintiff's deliberate indifference claim is **DISMISSED WITHOUT PREJUDICE** only as to Defendants Kelly, Shackleford, Poliseno, and Armor Health.

### b. NaphCare Defendants

The Court first addresses the claims against the NaphCare Employees—Defendants Shackleford, Kelly, O'Brien, Kosgey, and Pagedar.[3]

---

[3] Both NaphCare and Armor Health filed a motion for judgment on the pleadings on behalf of Defendants Shackleford, Kelly, and Kosgey.

### i. NaphCare Employees

Plaintiff's factual allegations against individual NaphCare employees begin on August 15, 2021, when Mr. Bradley was booked into FCCC, and end on October 17, 2024, the last day of NaphCare's contract to provide services at FCCC. (Am. Compl. ¶ 31–34.) The specific allegations against those individual employees, accepted as true, do not raise a reasonable inference that they acted recklessly.

First, as described above, Plaintiff alleges Defendant Shackleford, a counselor, placed Mr. Bradley on suicide watch upon his return from a hospital stay following his first suicide attempt at FCCC. (*Id.* ¶ 31–32.) That lone allegation against Defendant Shackleford during her time as a NaphCare employee is insufficient to demonstrate deliberate indifference.

Second, Plaintiff alleges that Mr. Bradley "was put on suicide watch, and taken off suicide watch, by various providers, including Defendants Kelly and O'Brien, without complete evaluation." (*Id.* ¶ 32.) The Court finds that this sole allegation against Defendants Kelly and O'Brien, without further context, is insufficient to demonstrate recklessness.

Third, as the Court determined above, the allegations against Kosgey are sufficient to raise a reasonable inference of deliberate indifference when Kosgey was an Armor Health employee. The claim against Kosgey can continue for that reason.

Finally, the sole allegation that Defendant Pagedar, a medical doctor, "rounded on one occasion, but she never completed a patient note" alone does not raise a reasonable inference that Pagedar acted recklessly. (*Id.* ¶ 33.)

### ii. NaphCare

Plaintiff alleges that NaphCare is a private corporation that contracted with Franklin County to provide medical and mental health services at FCCC. (Am. Compl. ¶ 5.) Accordingly,

as explained above regarding Armor Health, a § 1983 deliberate indifference claim can only be brought against NaphCare under a *Monell* theory of liability, not under a *respondeat superior* theory. But, as with Armor Health, Plaintiff expressly declines to bring a *Monell* claim against NaphCare. (Am. Compl. ¶¶ 64–73; ECF No. 20, PageID 302.)

For these reasons, Plaintiff's deliberate indifference claims against NaphCare Defendants Shackleford, Kelly, O'Brien, and Pagedar are insufficiently plead, and her claim against NaphCare fails as a matter of law. Plaintiff's deliberate indifference claim is **DISMISSED WITHOUT PREJUDICE** as to Kelly, O'Brien, Shackleford, Pagedar, and NaphCare. Because the claim against Kosgey is sufficiently pled regarding her time working for Armor Health, the claim against Kosgey can continue.

## II. Plaintiff's *Monell* Claim Against the Board

Under a *Monell* "policy or custom" theory of municipal liability, "[a] municipality may be held liable under one of four recognized theories: '(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.'" *Helphenstine*, 60 F.4th at 323 (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)).

As discussed, Plaintiff brings a *Monell* liability claim only against the Board. (Am. Compl. ¶¶ 64–73; ECF No. 16, PageID 266; ECF No. 20, PageID 302.) Plaintiff alleges that all the Individual Defendants named in the Amended Complaint were employees or agents of the Board and were acting in the course and scope of their employment while working at FCCC. (Am. Compl. ¶ 65.) She claims the Board "violated Talent Bradley's constitutional rights through enforcement of a county custom or policy that resulted in a failure to train, supervise, or discipline employees

16

and/or agents regarding the avoidance of constitutional violations and the appropriate techniques for identifying and treating serious medical conditions and mental health issues." (*Id.* ¶ 67.)

To prove a *Monell* claim under a failure to train or supervise theory of liability, a plaintiff "may prove (1) a 'pattern of similar constitutional violations by untrained employees' or (2) 'a single violation of federal rights, accompanied by a showing that [the municipality] has failed to train its employees to handle recurring situations presenting an obvious potential for a constitutional violation.'" *Helphenstine*, 60 F.4th at 323 (quoting *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 738–39 (6th Cir. 2015)). Plaintiff only alleges one constitutional violation—Mr. Bradley's death due resulting from deliberate indifference—so her claim relies on the second type of liability.

Plaintiff alleges the Board failed to provide adequate training to its medical personnel at FCCC regarding medical emergencies and mental health issues. (Am. Compl. ¶ 69.) She also alleges the Board "knowingly and recklessly hir[ed] and train[ed] medical personnel at FCCC who were not able to determine medical and mental emergencies." (*Id.* ¶ 61.) She further alleges that the Board's failure to train its personnel was "the moving force behind" the violation of Mr. Bradley's constitutional rights and that the "inadequacy was so likely to result in a violation of Constitutional rights" that the Board was deliberately indifferent. (*Id.* ¶¶ 70–71.)

Additionally, Plaintiff alleges that the Board, through its agents and employees at FCCC, failed to properly evaluate a new-onset psychotic break, to have frequent appointments as required for this condition, to have a psychiatrist participate in the care, to use medications appropriately, to develop a risk management plan, and to properly evaluate when to remove a patient from suicide watch. (*Id.* ¶ 41.) Furthermore, Plaintiff argues that the suicide by hanging of Keandre Bost at FCCC on December 7, 2021, just twenty days before Mr. Bradley's suicide by the same method

17

in the same jail, put the Board on notice that its training was deficient and likely to cause further injury. (ECF No. 28, PageID 366); *see Est. of Bost*, 2023 WL 8018903, at *4.

Accepting these facts as true, Plaintiff has pled enough to raise a reasonable inference that the Board could be liable as deliberately indifferent to Mr. Bradley's serious medical needs under a *Monell* theory of liability. As decided early in this Opinion and Order, Plaintiff adequately pleads an underlying constitutional violation against several Armor Health employees, and the Board contracted with Armor Health to provide medical and mental health services at FCCC. Plaintiff alleges several deficiencies in the care given at FCCC that, taken together, are sufficient to raise an inference that the Board, through its employees and agents, failed to train employees at FCCC to handle the recurring emergency situations as described above.

Accordingly, Plaintiff's *Monell* claim against the Board can continue.

## III.    Wrongful Death State Law Claim

Plaintiff brings a wrongful death claim under Ohio law against all Defendants based on the allegations as explained in the Background section above. (Am. Compl. ¶¶ 40–48.) In Ohio, wrongful death claims are governed by Ohio Revised Code Chapter 2125. *Mercer v. Keane*, 172 N.E.3d 1101, 1108 (5th Dist. Ohio Ct. App. 2021) ("A wrongful death claim is statutory in nature and does not exist at common law."). Under that chapter, in relevant part,

> When the death of a person is caused by wrongful act, neglect, or default which would have entitled the party injured to maintain an action and recover damages if death had not ensued, the person who would have been liable if death had not ensued . . . shall be liable to an action for damages, notwithstanding the death of the person injured[.]

Ohio Rev. Code § 2125.01. Furthermore,

> [A] civil action for wrongful death shall be brought in the name of the personal representative of the decedent for the exclusive benefit of the surviving spouse, the children, and the parents of the decedent, all of whom are rebuttably presumed to have suffered damages by reason of the wrongful death, and for the exclusive

18

benefit of the other next of kin of the decedent.

*Id.* § 2125.02(A).

"A wrongful-death action in Ohio has three elements: (1) the existence of a duty owed to the plaintiff's decedent; (2) a breach of that duty; (3) proximate causation linking the breach of the duty to the decedent's death." *CBC Eng'rs & Assocs. Ltd. v. Miller Aviation, LLC*, 880 F. Supp. 2d 883, 888 (S.D. Ohio 2012) (Rose, J.) (citing *Johnson v. Miller*, No. 2:11–CV–00067, 2011 WL 3793497 at *7 (S.D. Ohio Aug. 25, 2011) (Marbley, J.)).

Additionally, political subdivisions and jail employees are protected from liability for wrongful death by a degree of sovereign immunity under Ohio law. *See* Ohio Rev. Code §§ 2744.01, 2744.02, 2744.03; *Stefan v. Olson*, 497 F. App'x 568, 580 (6th Cir. 2012) (explaining Ohio's sovereign immunity laws for employees of political subdivisions). It is unclear whether Armor Health and NaphCare, as the private corporations hired to provide medical care at FCCC, are protected by this sovereign immunity under Ohio law. But because the Parties do not raise any immunity arguments, it is unnecessary to address sovereign immunity regarding Armor Health Defendants and NaphCare Defendants at this stage. The Board makes an immunity argument, which is assessed below.

### a. Armor Health Defendants

Plaintiff claims Armor Health Defendants fell below the accepted standard of care in treating Mr. Bradley, proximately causing his death. (Am. Compl. ¶ 41.) Armor Health Defendants' sole argument against Plaintiff's wrongful death claim is that the Court should decline to exercise supplemental jurisdiction over it because Plaintiff does not sufficiently plead a federal claim. (Armor Mot., PageID 214.) This Court has concluded otherwise above, finding that Plaintiff sufficiently pled a deliberate indifference claim against several individual Armor Health

19

Defendants. The Armor Health Defendants did not brief the issues of duty, breach, causation, damages, or immunity. (*See* Armor Health Mot.)

The question of duty is a matter of law for the Court to determine. *See Wallace v. Ohio DOC*, 773 N.E.2d 1018, 1026 (Ohio 2002). Here, Armor Health, as the private corporation hired to perform the governmental function of servicing a jail, and its employees, who performed those governmental functions, likely had a duty of care regarding Mr. Bradley's medical treatment. As explained above, "[u]nder the Fourteenth Amendment, pretrial detainees have a 'right to adequate medical care.'" *Downard for Est. of Downard*, 968 F.3d at 600. But since the issue was not briefed, for now, the Court assumes without deciding that Armor Health Defendants had a duty of care to Mr. Bradley.

Regarding breach and causation, as described in more detail above, Plaintiff alleges that Defendants failed to properly evaluate and treat Mr. Bradley's psychiatric emergency, causing Mr. Bradley's death by suicide. (Am. Compl. ¶¶ 41, 45.) Regarding damages, Plaintiff alleges that the Estate incurred funeral expenses and other expenses. (*Id.* ¶ 45.) She also alleges that Mr. Bradley's heirs suffered severe mental anguish and emotional distress and that his survivors lost his society, care, attention, protection, and more. (*Id.* ¶ 46.) "For a wrongful death claim, the beneficiaries can recover 'compensatory damages,' which include damages for loss of support, loss of services, loss of society, loss of prospective inheritance, and the beneficiaries' mental anguish." *Freudeman v. Landing of Canton*, 702 F.3d 318, 332 (6th Cir. 2012) (citing Ohio Rev. Code § 2125.02(B)).

At this stage, without any arguments on duty, breach, causation, or damages, the Court holds that Plaintiff has sufficiently pled all elements of her wrongful death claim as to all Armor Health Defendants. *See Johnson*, 2011 WL 3793497, at *7 (holding wrongful death claim sufficiently pled where duty was not argued and where complaint otherwise contained sufficient

facts to raise a plausible claim for relief).

### b. NaphCare Defendants

Plaintiff alleges that the actions of NaphCare and its employees, along with all other Defendants, proximately caused Mr. Bradley's death through a breach of the applicable standard of care. (Am Compl. ¶ 41.) NaphCare Defendants argue that the actions of NaphCare and its employees are too remote from the circumstances of Mr. Bradley's death to properly allege proximate cause. (NaphCare Mot., PageID 313.) Plaintiff argues that the successive tortfeasor rule renders NaphCare Defendants liable for Mr. Bradley's death because Armor Defendants' failure to provide care was necessitated by NaphCare Defendants' original negligence. (ECF No. 20, PageID 295.)

In Ohio, "[t]he successive tortfeasor rule holds that the original tortfeasor is liable for the negligence of subsequent tortfeasors whose acts are necessitated by the original negligence." *Traster v. Steinreich*, 523 N.E.2d 861, 862 (9th Dist. Ohio Ct. App. 1987). The successive tortfeasor rule is assessed as a matter of proximate causation. Generally, the chain of proximate causation from one event to the next is broken by an intervening cause or event only if that cause is a superseding cause or event. *See Turner v. Children's Hosp., Inc.*, 602 N.E.2d 423, 434 (10th Dist. Ohio Ct. App. 1991). "[I]f the intervening cause or event is foreseeable, or necessitated by the original negligence, then the intervening cause or event is not superseding in the law and will not relieve the offender of liability." *Id.*

Here, Plaintiff does not plead facts sufficient to raise an inference that the alleged torts and constitutional violations of Armor Health Defendants were necessitated by or were a foreseeable result of torts or violations by NaphCare Defendants. There is no allegation that the Armor Health Defendants relied upon a treatment plan established by NaphCare Defendants or that the actions

taken before Armor Health took over care at FCCC necessitated the allegedly deficient care that followed. No matter the allegations against NaphCare Defendants, Armor Health Defendants could have engaged psychiatric care for Mr. Bradley, prescribed different medications, and provided more hospital visits or a lengthier suicide watch. As alleged, Armor Health Defendants were not prevented from taking any of those actions regarding the treatment of Mr. Bradley by NaphCare Defendants.

Additionally, the allegations against NaphCare Defendants are too remote from the circumstances of Mr. Bradley's death to adequately plead proximate causation. During the time NaphCare provided medical and mental health services at FCCC, Mr. Bradley was taken to the hospital for care after a suicide attempt, placed on suicide watch multiple times, seen by a nurse practitioner, and given medication. As to each of the NaphCare Defendants, Plaintiff did not plead facts sufficient to raise an inference that the care given proximately caused Mr. Bradley's wrongful death. The more viable allegations about deficient care and violations of Mr. Bradley's constitutional rights occurred after Armor Health started providing medical and mental health services at FCCC in mid-October 2021.

Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's wrongful death claim as to NaphCare Defendants, except for those Defendants who are also Armor Health Defendants.

### c.  The Board

The Board argues it is entitled to sovereign immunity from Plaintiff's wrongful death claim under Ohio's Political Subdivision Tort Liability Act, Ohio Revised Code Chapter 2744. (Board Mot., PageID 336.) Plaintiff does not make an argument regarding immunity in response other than asserting that the Board's Motion should be denied. (*See* ECF No. 32.) Ohio courts apply a

22

three-step process to determine whether a political subdivision is immune from tort liability under the statute.[4] *Rankin v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 889 N.E.2d 521, 523 (Ohio 2008).

The first step is to determine whether the entity is a political subdivision under Ohio law and whether it was performing a governmental function or a proprietary function. *Id.* at 524. The Board, on behalf of Franklin County, is a political subdivision under Ohio law, defined as "a municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state." Ohio Rev. Code § 2744.01(F). And the operation of a jail is a governmental function. *Id.* § 2744.01(C)(2)(h) (defining "governmental function" to include "[t]he design, construction, reconstruction, renovation, repair, maintenance, and operation of jails, places of juvenile detention, workhouses, or any other detention facility"). It is not a "proprietary function" under Ohio Revised Code § 2744.01(G).

"[P]olitical subdivisions are generally not liable in damages for causing the personal injuries or death of a person." *Rankin*, 889 N.E.2d at 524 (citing Ohio Rev. Code § 2744.02(A)(1) ("Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or

---

[4] As mentioned above, the Court does not decide whether Armor Health Defendants or NaphCare Defendants are immune under this statute because they do not raise the argument in their Motions. Additionally, the Individual Defendants do not argue immunity under this statute, so the Court also does not decide that issue. The Court notes that "[f]or the individual employees of political subdivisions, the analysis of immunity differs. Instead of the three-tiered analysis . . . R.C. 2744.03(A)(6) states that an employee is immune from liability unless the employee's actions or omissions are manifestly outside the scope of employment or the employee's official responsibilities, the employee's acts or omissions were malicious, in bad faith, or wanton or reckless, or liability is expressly imposed upon the employee by a section of the Revised Code." *Rankin*, 889 N.E.2d at 526–27 (quotation and citation omitted).

omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.")). Because the Board is a political subdivision performing a governmental or proprietary function, it is generally entitled to immunity here at the first step.

Second, courts determine whether any of the immunity exceptions under § 2744.02(B) apply. *See Rankin*, 889 N.E.2d at 524. Those exceptions relate to losses caused by operation of a motor vehicle, acts taken "with respect to proprietary functions," claims involving public roads and physical defects of buildings, and express civil liability imposed elsewhere under the Ohio Revised Code. *See* Ohio Rev. Code § 2744.02(B). None of those exceptions applies. Specifically, the exception relating to proprietary functions does not apply because the Board was performing a governmental function, not a proprietary one. *See id.* § 2744.02(B)(2). Accordingly, the Court need not reach the third step of the analysis—whether immunity can be reinstated under Ohio Revised Code § 2744.03. *See Rankin*, 889 N.E.2d at 526 (ending at step two where no immunity exception applied).

Under Ohio Revised Code Chapter 2744, the Board is entitled to sovereign immunity for the performance of governmental functions, namely the operation of the jail. Accordingly, Plaintiff's wrongful death claim against it is **DISMISSED WITH PREJUDICE**.

## IV.   Unnamed Doe Defendants

On December 10, 2024, the Court ordered Plaintiff to show cause within 14 days regarding her claims against 20 unnamed "Doe" Defendants. (ECF No. 25.) Plaintiff did not respond to the Order. As this Court stated in that order, Plaintiff was required to "name all the parties" in the Complaint, Federal Rule of Civil Procedure 10(a), and did not amend the Complaint to reflect the actual identities of any of the 20 unnamed "Doe" Defendants. (*Id.*, PageID 341.) The Court's deadline to move to amend and to move for joinder of parties was June 21, 2024. (ECF No. 18.)

24

Additionally, service over those unnamed parties has not occurred within the 90-day window set in Federal Rule of Civil Procedure 4(m). Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's claims against all unnamed "Doe" Defendants. *See Petty v. County of Franklin*, 478 F.3d 341, 345–36 (6th Cir. 2007) (affirming district court's dismissal of unnamed defendants on similar grounds).

## CONCLUSION

For the reasons stated in this Opinion and Order, the Court **GRANTS IN PART and DENIES IN PART** Armor Health Defendants' Motion for Judgment on the Pleadings (ECF No. 13), **GRANTS IN PART and DENIES IN PART** NaphCare Defendants' Motion for Judgment on the Pleadings (ECF No. 15), and **GRANTS IN PART and DENIES IN PART** the Franklin County Board of Commissioners' Motion for Judgment on the Pleadings (ECF No. 23). The Court **DENIES** Plaintiff's Motion for Default Judgment Against Armor Correctional Health Services, Inc. (ECF No. 41.) Defendants' Joint Motion to Stay Discovery Pending the Court's Ruling on Defendants' Motions for Judgment on the Pleadings is **DENIED AS MOOT**. (ECF No. 26.)

The Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's deliberate indifference claim as to Defendants Armor Health, NaphCare, Kelly, O'Brien, Shackleford, Pagedar, and Poliseno. The deliberate indifference claim can continue as to Defendants Garbrecht, Kosgey, Latelle, Littick, and White-Davis. Plaintiff's *Monell* claim against the Franklin County Board of Commissioners can also continue.

The Court **DISMISSES WITH PREJUDICE** Plaintiff's state law wrongful death claim against the Franklin County Board of Commissioners. The Court **DISMISSES WITHOUT PREJUDICE** the wrongful death claim as to all NaphCare Defendants, except those Defendants who are also named as Armor Health Defendants. Plaintiff's wrongful death claim can continue

25

as to all Armor Health Defendants.

Last, the Court **DISMISSES WITHOUT PREJUDICE** all Plaintiff's claims as to all unnamed "Doe" Defendants.

The Clerk is **DIRECTED** to terminate the following parties from the case: Defendants NaphCare, Inc., O'Brien, Pagedar, and all Doe Defendants. At least one claim remains against all other Defendants.

This case remains open.

**IT IS SO ORDERED.**

3/19/2025                                         s/Edmund A. Sargus, Jr.
**DATED**                                      **EDMUND A. SARGUS, JR.**
                                                       **UNITED STATES DISTRICT JUDGE**